John R. Habashy, Esq. (SBN 236708)
Nicole E. Rivera, Esq. (SBN 325478)
**Lexicon Law, PC**
633 W. 5th St., 28th Floor
Los Angeles, CA 90071
Tel: (213) 223-5900
Fax: (888) 373-2107
*john@lexiconlaw.com*
*nicole@lexiconlaw.com*

[*Additional Counsel Listed on the following page*]

*Attorneys for Plaintiff, Sadie Saavedra, and the proposed class*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| SADIE SAAVEDRA, individually and on behalf of a class of similarly situated individuals,<br><br>                    Plaintiff,<br>vs.<br><br>EVERI PAYMENTS, INC., a corporation; and EVERI HOLDINGS, INC.a corporation,<br>                    Defendants. | **CASE NO.**  21-6999<br><br>**COMPLAINT FOR:**<br><br>1. **VIOLATION OF THE UNFAIR COMPETITION LAW CAL. BUS. & PROF. CODE § 17200**<br><br>2. **UNJUST ENRICHMENT**<br><br>**CLASS ACTION**<br><br>**[DEMAND FOR JURY TRIAL]** |

**Additional Counsel for Plaintiff and the Putative Class:**
Scott D. Owens (FL 0597651)
(pending admission *pro hac vice*)
**Scott D. Owens, P.A.**
2750 N. 29th Ave., Ste. 209A
Hollywood, FL 33020
Tel: (954) 589-0588
Fax: (954) 337-0666
*scott@scottdowens.com*

## CLASS ACTION COMPLAINT

Plaintiff Sadie Saavedra ("Plaintiff"), on behalf of herself and other similarly situated individuals, hereby sues Everi Payments, Inc. and Everi Holdings, Inc. (collectively "Defendant" or "Everi"), and alleges as follows based on personal knowledge as to herself and on information and belief as to all other matters, and demands trial by jury.

## I.    INTRODUCTION

1.    Everi provides, among other things, debit and credit card cash advance transaction services to gamblers at thousands of casino gaming and other wagering establishments across the country and the world. Everi is the principal merchant in each cash-access transaction that a patron performs at each establishment where Everi's services are provided, and Everi's clients (the owners and operators of these underlying establishments) act as Everi's agent in providing such services to patrons.

2.    Acting as the principal merchant, Everi provides – either directly or through its gaming establishment clients (with whom it contracts) acting as its agents –

various cash-access services at thousands of its clients' gaming establishments across the country – including by dispensing cash withdrawn from its proprietary automated teller machines leased to its clients ("ATMs") and by processing credit and debit card cash-advance transactions on electronic terminals (also owned by Everi and leased to its clients) located at points-of-sale ("POS") in its clients' gaming establishments.

3.     A significant portion of Everi's revenue is from fees charged to consumers such as Plaintiff for its cash-access and services. These fees which are paid by banks and ultimately charged to the cardholders are known as "interchange fees." These interchange fees are paid by the retail banks each time a retail bank account holder makes a cash withdrawal, funds transfer, or account balance inquiry at one of Everi's ATMs.  Retail banks deem these activities as "out of network" if conducted at one of Everi's ATMs.

4.     When retail bank account holders engage in activities such as cash withdrawals, fund transfers, or account balance inquiries at an out-of-network ATM, the card-issuing banks will typically assess an out-of-network ATM fee for such activity. For example, Plaintiff's bank, Bank of America, N.A. ("BofA"), automatically debits a $2.50 out-of-network balance inquiry fee from the account holder's account, and from that fee pays a series of fees to third parties in conjunction with the purported balance inquiry. Similarly, BofA automatically

debits a $2.50 cash withdrawal fee for cash withdrawals from an out-of-network ATM, and as with the purported balance inquiry, will then pay a series of fees to third parties in conjunction with the cash withdrawal. For each $2.50 fee assessed by BofA for an out-of-network transaction, BofA will then pay an interchange fee of $0.25, directly to Everi. Everi owns the ATM where the purported balance inquiry was conducted. BofA also then pays a "Switch Fee" to the network provider. Therefore, both BofA and Everi profit from the account holder's out-of-network balance inquiry or other transaction.  BofA collects the $2.50 out-of-network fee from its account holder, and Everi collects the $0.25 interchange fee from BoFA.

5.      This case arises from Everi's deceptive and unlawful practice of systematically maximizing the number of out-of-network transaction fees incurred by retail bank account holders. Everi has a monetary incentive to generate as many out-of-network transaction fees as possible. This has led Everi to concoct deceptive screen prompts designed to mislead unsuspecting account holders, including Plaintiff, into incurring out-of-network fees for transactions they did not wish to conduct and that they did not consent to. The improper conduct of Everi has resulted in retail bank account holders, including Plaintiff, being assessed out-of-network balance inquiry fees by their card-issuing banks, including BofA, in circumstances the account holders reasonably believed would not result in the assessment of a fee.

6.     Account holders, including Plaintiff, have been assessed fees for requesting multiple balance inquires where the account holder did not request or want such an inquiry, let alone multiple. Plaintiff and members of each of the Everi Defendant Classes, as defined below, seek to recover wrongfully obtained funds from Everi pursuant to long-standing authority under California's Unfair Competition Laws ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*., which hold that portions of payments that can be directly traced to an indirect beneficiary are recoverable when the payments were fraudulently induced as a result of the indirect beneficiary's deceptive conduct.

7.     Plaintiff and members of the putative Classes have been injured by Everi and bring claims of violation of the UCL and unjust enrichment against Everi, seeking damages, restitution, injunctive relief and other appropriate relief.

## II.    JURISDICTION AND VENUE

8.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative Class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed classes is a citizen of different state than Everi.

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because each of the Defendants is subject to personal jurisdiction here and regularly conducts

business in this District, and because a substantial part or the events or omissions giving rise to the claims asserted herein occurred in this District.

10.     Plaintiff is a citizen and resident of Los Angeles, California.

11.     Defendants Everi Payments, Inc. and Everi Holdings, Inc. are each a Delaware corporation, whose corporate headquarters and principal office is located at 7250 South Tenaya Way, Suite 100, Las Vegas, NV 89113. Everi regularly and systematically operates ATM machines throughout the State of California and the Country, including in this District, and provided all ATM related services to its customers, including members of the putative Classes. As such, it is subject to the jurisdiction of this Court.

## III.     PARTIES

### A. Plaintiff

12.     Plaintiff Sadie Saavedra is a resident of Los Angeles, California. On August 16, 2021, Plaintiff placed her ATM debit card into the Everi ATM machine located at 888 Bicycle Casino Drive, Bell Gardens, California, in order to make a cash withdrawal. After entering her pin, Plaintiff received a prompt regarding a balance inquiry associated with the subject ATM card.

13.     Upon checking her account online, Plaintiff was surprised to learn that she was assessed two (2) separate balance inquiry fees, each in the amount of $2.50, in [separate and in addition to a $2.50 cash withdrawal fee].  The two $2.50 balance

inquiry fees were assessed on each account associated with the card Plaintiff used to conduct the withdrawal, despite the prompt only discussing ONE FEE.  Further, Plaintiff was never notified that BofA would assess a balance inquiry fee for each account held at BofA, despite only making one withdrawal from a single account. Had Plaintiff known she would be assessed multiple balance inquiry fees, she would not have attempted the transaction. Plaintiff was charged a total of $7.50 in fees for making a $60.00 cash withdrawal.

14.    Immediately following her transaction, BofA debited two (2) separate $2.50 out-of-network ATM balance inquiry fees from her two accounts associated with the subject card, for the purported balance inquiries.   BofA then forwarded approximately $0.50 of the $5.00 collected from Plaintiff to Everi for the purported balance inquiries.

15.    Plaintiff intends to continue to use third-party ATM machines, including ATM machines owned by Everi, at times when she finds them convenient, when she does not have time to visit an ATM owned and operated by her card-issuing bank. Plaintiff is seeking an injunction to prevent herself and others from being misled in the future by Everi's balance inquiry fee practices. Because ATM transactions are so common, the likelihood of Plaintiff falling victim to this improper business practice persists in the future.

**B. Defendant**

16.     Everi provides, among other things, debit and credit card cash advance transaction services to gamblers at thousands of casino gaming and other wagering establishments throughout the State of California and across the country and the world. Everi provides these cash-access services at thousands of points-of-sale located at its clients' gaming establishments across the country – including by dispensing cash withdrawn from its proprietary ATMs leased to its clients and by processing credit and debit card cash-advance transactions on electronic terminals (also owned by Everi and leased to its clients) located in its clients' gaming establishments.

## IV.     FACTUAL BACKGROUND

### A. Everi is Incentivized to Maximize Interchange Fees from Balance Inquiries

17.     Everi misled Plaintiff and members of the Classes, through its use of deceptive ATM screen prompts, into conducting purported balance inquiries at its independent, non-bank affiliated ATM machines. Everi then transmitted coded "balance inquiries," to the card-issuing banks, including Plaintiff's bank. The card-issuing banks, including Plaintiff's, took Everi's representations at face-value and did not verify whether their account holders had actually engaged in balance inquiries, nor did they verify whether their account holders actually requested or

agreed to multiple balance inquiries where multiple accounts were associated with the card used in the subject transaction. Plaintiff's bank automatically accepted Everi's coding, assumed the balance inquiries made at the "out of network" or foreign ATMs were appropriate, and assessed a $2.50 fee for each account associated with the card used in the transaction for the purported out-of-network balance inquiries against Plaintiff's account. Immediately after collecting the fee, Plaintiff's bank then paid $0.50 of the $5.00 (2 x $2.50) fee directly back to Everi in the form of an "interchange fee."

18.     Based on this interchange fee, Everi received a directly traceable and standardized amount of money from Plaintiff's bank and other retail banks each time it misled Plaintiff and other customers into engaging in a purported out-of-network balance inquiries at one of its ATM machines:

> In ATM transactions, the consumer may pay a foreign fee to his or her bank if the ATM used is not owned by his or her bank. The consumer may also pay a surcharge fee to the ATM owner. **The issuing bank pays an interchange fee to the ATM owner for the consumer's use of that ATM** and also pays a switch fee to the ATM network for transmitting the transaction information

*See* "A Guide to the ATM and Debit Card Industry, 2003 Federal Reserve Bank of Kansas City" ("KC Federal Reserve ATM Guide"), at pp. 5-6 (emphasis added).[1] The report by the Federal Reserve Bank of Kansas City describes and illustrates the traceable nature of this practice.

19.    An interchange fee is a payment by the card-issuing bank to the ATM owner to compensate the owner for the expense of installing and maintaining the ATM. Different types of ATM activities carry different interchange fees. Plus and Cirrus, for example, set a fee of 50 cents for a withdrawal and ***25 cents for either a balance inquiry*** or an inter-account transfer. *Id*. at p. 33. (emphasis added). While the networks set the interchange fee amounts, the banks are required to pay Everi the preset amount on a per transaction basis.

20.    As set forth in greater detail below, Plaintiff was assessed two (2) separate balance inquiry fees as a result of using one of Everi's ATMs.

21.    Visa, for example, publishes an annual schedule of its interchange reimbursement fees. The April 2021, "Visa USA Interchange Reimbursement Fees;

_____

[1] https://www.kansascityfed.org/documents/6674/GuideATM_DebitCardIndustry_2003.pdf

Visa Supplemental Requirements"[2] provides that the interchange reimbursement fee for ATM Balance Inquiries is set at $0.25 per transaction:

| Other ATM Non-Cash Disbursement Transactions | |
|---|---|
| ATM DECLINE FEE | $0.25 |
| ATM BALANCE INQUIRY FEE | $0.25 |
| ATM FUNDS TRANSFER FEE | $0.25 |
| ATM MINI STATEMENT FEE | $0.30 |
| ATM SHARED DEPOSIT FEE | $2.50 |
| Plus Alternative Media Fee (Paid by acquirer) | $0.10 |

*See* Visa USA Interchange Reimbursement Fees; Visa Supplemental Requirements, April 2019, at p. 19.[3]  Accordingly, every time Everi deceives an account holder into performing a purported balance inquiry that they did not wish to perform, or were led to believe would be wholly free of charge, Everi receives $0.25 from the out-of-network balance inquiry fee assessed by BofA and other retail banks, which is directly traceable to the customer's account.

22.     Everi has a monetary incentive to increase the total number of out-of-network balance inquiries that are performed at its ATM machines by Plaintiff, as it receives

---

[2] https://usa.visa.com/content/dam/VCOM/download/merchants/visa-usa-interchange-reimbursement-fees.pdf
[3] Upon information and belief, Visa's interchange rules or similar rules set by other networks apply to all ATM machine activities owned by Everi.

interchange fees directly from retail banks for each balance inquiry performed by Plaintiff and other customers at the out-of-network ATMs. As the Federal Reserve Bank of Kansas City observed:

> There are two measures of network volume: transaction and switch. ATM transaction volume includes the total number of deposits, withdrawals, transfers, payments and **balance inquiries** performed on ATMs in the network, whether or not those transactions are transmitted through a network data center. This measure is relevant, in part, **because interchange fees paid to ATM owners are based on transaction volume**.

*See* KC Federal Reserve ATM Guide, at p. 20 (emphasis added).

23.    As set forth in greater detail below, Everi employed a misleading series of screen prompts or other misrepresentations or omissions at the ATM machines to trick account holders, including Plaintiff, into incurring multiple out-of-network balance inquiry fees where only a single balance inquiry pertaining to one account was intended.

### B. Plaintiff's Experience and Reasonable Expectations

24.    There are three relevant facts to consider in the context of Plaintiff's UCL claims against Everi—all centered around the account holder's experience and mindset when it comes to making an ATM transaction: 1) the vast majority of account holders intend to use or have used ATMs exclusively to make fast, convenient, cash withdrawals; 2) all of the retail banks servicing account holders, utilize an initial "menu" screen of options at their own ATM machines, wherein

account holders have to affirmatively request a balance inquiry should they wish to make one, and when they do, it pertains to a specific account (not automatically each account associated with the card); and, most importantly, 3) all banks and ATMs are required by federal law to provide account holders with the option to receive a receipt for their cash withdrawal transaction, free of charge (*see* 12 C.F.R. § 1005.9(a)), which again pertains to the specific account that was used in the transaction, not all accounts associated with the card.

25.    First, account holders, including Plaintiff, use ATMs almost exclusively to make fast, convenient, cash withdrawals. In 2012, there were 5.8 billion ATM cash withdrawals—more than twice as many as over-the-counter withdrawals at financial institution branches (2.1 billion). The 2013 Federal Reserve Payments Study, at p. 51.[4] Everi has known for years that the vast majority of customers who come to use its ATM machines are there to perform only a cash withdrawal.

26.    In 2002, approximately 77% of the average transaction mix at retail bank ATMs were cash withdrawals, while balance inquiries only made up 11% of all activities. *See* KC Federal Reserve ATM Guide, at p. 119, n. 6.

---

[4]    https://frbservices.org/assets/news/research/2013-fed-res-paymt-study-detailed-rpt.pdf

27.     Upon information and belief, the number of intentional balance inquiry transactions at Everi ATMs has declined even further since 2002, due to the rapidly increasing availability of cost-free alternatives, such as checking a balance on a mobile app, phone banking, or online access. In other words, paying for multiple balance inquires at an ATM is not a rational act for the vast majority of consumers with so many no-cost alternatives which can be conducted anywhere at any time.

28.     Second, retail bank customers are accustomed to having to affirmatively opt-in to perform balance inquiry transactions for the accounts they wish to seek balance information for. And in such instances, retail bank customers do not anticipate being charged multiple balance inquiry fees for each account linked to the card used for the transaction.

29.     The majority of retail banks in California uniformly present a "menu" screen to their customers at the beginning of an ATM transaction on their bank-owned ATMs. This screen allows users the clear choice as to whether or not they would like to conduct a balance inquiry and clearly discloses what account the transaction will pertain to.

30.     Also important—account holders of all retail banks, including Plaintiff, have become accustomed to receiving a receipt at the conclusion of their cash withdrawal transactions conducted at their card-issuing bank's ATM machines. And with most major banks in California, their customers are always presented with a separate

screen prompt that asks them if they would like a receipt with their account balance on it—free of charge—at the conclusion of a cash withdrawal transaction, and the balance printed is the balance for the account used in the transaction, not one for each account associated with the card used.

31.     Third, where an account holder is interested in conducting a balance inquiry, they would not assume that it would be for each account associated with the card and that a separate fee would be assessed for each account. And no reasonable person would consent, or opt-in to a balance inquiry if they were sufficiently apprised that they would incur multiple balance inquire fees, and would be even less likely to do so where they are only seeking to obtain balance information pertaining to a single account. In other words, no reasonable person would consent to incurring multiple balance inquiry fees for trying to conduct a single balance inquiry on a single account.

32.     In fact, financial institutions are uniformly required to provide customers the option of receiving a receipt after they complete a funds transfer, free of charge. *See* 12 C.F.R. § 1005.9. The "required receipt" has a dramatic impact on the consumers' expectations and experiences when they approach an ATM machine. Consumers are accustomed to receiving a receipt with their account balance information printed on it following a cash withdrawal transaction at an ATM—free of charge, and

pertaining to the account associated with the transaction—when they use their card-issuing bank's ATM machines.

33.    However, as discussed below, Everi preyed on the above reasonable expectations of Plaintiff and members of the Classes by systematically implementing prompts and other disclosures at ATM machines that are misleading, or otherwise insufficient to fairly apprise customers of the balance inquiry fees they would incur, in order to unlawfully generate greater fee revenue from cash withdrawals.

### C. Everi's Misdeeds

34.    Everi's ATM machines misleadingly and erroneously register two or more balance inquiries (one for each account associated with the card used in the transaction), resulting in the assessment of two or more out-of-network balance inquiry fees by Plaintiff's and other customers' card-issuing banks, even though they had no intent to conduct multiple balance inquiries for each account associated with the card used in the transaction.

35.    Indeed, no reasonable consumer would undertake two balance inquiries on a single ATM use. It would be nonsensical to do so.

36.    Despite a reasonable consumer's expectation and despite Everi's failure to inform or other otherwise obtain the consumer's consent to conduct a balance inquiry, Everi charges a balance inquiry fee for each account associated with the

card used in the transaction (resulting in multiple balance inquiry fees for cards associated with multiple bank accounts), to account holders who were only interested in making a cash withdrawal.

37.    Consumers, including Plaintiff never had any reason to suspect they had committed or consented to a balance inquiry for each account associated with the card used.

38.    Yet, despite that lack of intent or consent, Everi customers, including Plaintiff, were charged two or more separate out-of-network balance inquiry fees by their card-issuing banks despite only consenting to a single balance inquiry. Everi, in turn, received approximately $0.25 each for unwarranted balance inquiry that the account holders never performed.

39.    Accordingly, Plaintiff and the Class are entitled to restitution of the interchange fees Everi earned with respect to the purported balance inquiry fees as a result of consumers' attempt to conduct a single balance inquiry, as alleged above, because the fees are directly traceable to the purported balance inquiries fraudulently induced or assessed by Everi.

## V.    CLASS ALLEGATIONS

### A. The Everi Classes

40.    Plaintiff brings this action on behalf of herself, and on behalf of all others similarly situated against Everi.

41. The proposed Classes are defined as:

All holders of a checking account who, within the applicable statute of limitations preceding the filing of this lawsuit, were assessed a fee for purportedly undertaking a balance inquiry at an Everi ATM (The National Balance Inquiry Class).

All holders of a checking account in California who, within the applicable statute of limitations preceding the filing of this lawsuit, were assessed a fee for purportedly undertaking a balance inquiry at an Everi ATM (The California Balance Inquiry Class).

42. Excluded from each of the aforementioned Classes are Defendant, its subsidiaries and affiliates, its officers, directors and members of their immediate families and any entity in which Defendant has a controlling interest, the legal representatives, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

43. Plaintiff reserves the right to modify or amend the definitions of the proposed Classes, and/or to add a Subclass(es), if necessary, before this Court determines whether certification is appropriate.

44. The parties are numerous such that joinder is impracticable. Upon information and belief, and subject to Class discovery, the Classes consist of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to Defendant's and/or its'

customers' card-issuing banks' records. Defendant has the administrative capability through its computer systems and other records to identify all members of the Classes, and such specific information is not otherwise available to Plaintiff.

45.     The questions here are ones of common or general interest such that there is a well-defined community of interest among the Class members. These questions predominate over questions that may affect only individual Class members because Everi has acted on grounds generally applicable to the Classes. Such common legal or factual questions include, but are not limited to:

a.  whether Everi improperly received interchange fees from financial institutions resulting from improper out-of-network balance inquiries;

b.  whether such conduct as alleged herein is deceptive;

c.  whether Everi violated the UCL; and

d.  whether Plaintiff and other members of the Classes have sustained financial losses as a result of Everi's wrongful business practices described herein, and the proper measure of restitution.

46.     It is impracticable to bring Class members' individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would

engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

47.    Plaintiff's claims are typical of the other class members in that they arise out of the same wrongful business practices by Everi as described herein.

48.    Plaintiff is a more than adequate representative of each of the Classes in that she has suffered damage as a result of Everi's improper business practices. In addition:

    a.  Plaintiff is committed to the vigorous prosecution of this action on behalf of herself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers;

    b.  there is no conflict of interest between Plaintiff and the unnamed Class members;

    c.  Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

    d.  Plaintiff's counsel has the financial and legal resources necessary to meet the substantial costs and address the legal issues associated with this type of litigation.

49.     Everi has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

50.     All conditions precedent to bringing this action have been satisfied and/or waived.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE UNFAIR COMPETITION LAW
### Cal. Bus. & Prof. Code § 17200 (fraud prong)

(Against Everi on Behalf of All Classes)

51.     Plaintiff incorporates all preceding allegations by reference as if fully set forth herein.

52.     Everi's conduct described herein violates the UCL, codified at Cal. Bus. & Prof. Code § 17200, *et seq.*

53.     The UCL prohibits and provides civil remedies for unfair competition. Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language.

54.     By defining unfair competition to include "any unlawful, unfair or fraudulent business act or practice," the UCL permits violations of other laws to be treated as

unfair competition that is independently actionable, and sweeps within its scope acts and practices not specifically proscribed by any other law.

55.   The UCL expressly provides for restitution and injunctive relief, and also contains provisions denoting its public purpose. A claim for injunctive relief under the UCL is brought by a plaintiff acting in the capacity of a private attorney general. Although the private litigant controls the litigation of an unfair competition claim, the private litigant is not entitled to recover compensatory damages for his own benefit, but only disgorgement of profits made by the defendant through unfair or deceptive practices in violation of the statutory scheme or restitution to victims of the unfair competition.

56.   Everi committed deceptive and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq*., by employing a deceptive screen prompt at its ATM machines which had the effect of misleading consumers, including Plaintiff, into incurring out-of-network balance inquiry fees that they did not consent to. By charging a balance inquiry fee for each account associated with the card used in the transaction but failing to disclose that multiple fees would be assessed, Everi intentionally misleads consumers into believing that they will only be assessed a single balance inquiry fee. Had consumers, including Plaintiff, been adequately informed by Everi that they would be assessed a balance inquiry fee for each account associated with the card used, they would have been able to weigh the

convenience and benefit in engaging in these transactions against the cost of the out-of-network fee assessed to them by their card-issuing banks.

57.     Plaintiff and members of the Classes acted as reasonable consumers in relying upon the material representation of the screen prompt which fail to inform user that they will be assessed a balance inquiry fee for each account associated with the card used.

58.     Everi's unfair business practices are immoral, unethical, oppressive, unscrupulous, unconscionable and/or substantially injurious to Plaintiff and members of the Classes.

59.     As a result of Everi's violations of the UCL, Plaintiff and members of the Class have unwittingly paid, and/or will continue to pay, out-of-network balance inquiry fees to their card-issuing banks, and thereby, have suffered and will continue to suffer financial harm. In addition, Everi's conduct continues to deceive the general public. Everi's misrepresentations and omissions in its ATM screen prompts are likely to deceive current and prospective account holders making corresponding public injunctive relief necessary.

60.     Everi receives an approximately $0.25 interchange fee from the consumers' card-issuing banks each time it tricks a consumer into performing an out-of-network balance inquiry at one of its ATM machines. Everi is liable to Plaintiff and the proposed Class, because those funds are directly traceable from the out-of-network

balance inquiry fee assessed by all retail banks and directly result from the misleading conduct of Everi.

61.     Therefore, Plaintiff and the National Balance Inquiry Class and California Balance Inquiry Class seek restitution, injunctive relief, and other appropriate relief prayed for below.

## SECOND CAUSE OF ACTION

### UNJUST ENRICHMENT

(Against Everi on Behalf of All Classes)

62.     Plaintiff incorporates all preceding allegations by reference as if fully set forth herein.

63.     Plaintiff, on behalf of herself and the Classes, assert a common law claim for unjust enrichment to the extent they have no adequate remedy at law.

64.     By means of Everi's unlawful conduct alleged herein, Everi engaged in practices with respect to providing financial services to Plaintiff and members of the Classes that was unfair, unconscionable, and oppressive.

65.     Everi knowingly received and retained wrongful benefits and funds from Plaintiff and members of the Classes. In doing so, Everi acted with conscious disregard for the rights of Plaintiff and members of the Classes.

66.     As a result of Everi's wrongful conduct as alleged herein, Everi has been unjustly enriched at the expense, and to the detriment of Plaintiff and members of the Classes.

67.     Everi's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

68.     Under the common law doctrine of unjust enrichment, it is inequitable for Everi to be permitted to retain the benefits it received, and is still receiving, without justification, from Plaintiff and members of the Classes in an unfair, unconscionable, and oppressive manner. Everi's retention of such funds under circumstances making it inequitable to do so, constitutes unjust enrichment.

69.     The financial benefits derived by Everi rightfully belong to Plaintiff and members of the Classes and must be returned to them.

70.     Therefore, Plaintiff asserts a claim of unjust enrichment under California law. Furthermore, as California law on unjust enrichment is the same or substantially the same with respect to all other states in which Everi does business, Plaintiff asserts this claim on behalf of the national classes and the California classes.

## VI.     **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant for herself and the Class members as follows:

**A.** restitution of the interchange fees transferred from Plaintiff's and Class members' card-issuing banks to Everi for each of these fees as alleged herein and as a result of the wrongs alleged herein in an amount to be determined at trial;

**B.** pre-judgment interest at the maximum rate permitted by applicable law;

**C.** an order on behalf of the general public enjoining Everi from continuing to employ unfair methods of competition and committing unfair and deceptive practices as alleged in this complaint and any other acts and practices proven at trial;

**D.** costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to Cal. Civ. Proc. Code § 1021.5, and other applicable law; and

**E.** such other and further relief as this Court deems just and proper.

## VII.   **DEMAND FOR JURY TRIAL**

Plaintiff and all others similarly situated hereby demand a trial by jury on all issues in this complaint that are so triable as a matter of right.

Dated: August 30, 2021                    Respectfully submitted,
                                          /s/ John R. Habashy
                                          *One of Plaintiff's Attorneys*

John R. Habashy, Esq. (SBN 236708)
Nicole E. Rivera, Esq. (SBN 325478)
**Lexicon Law, PC**
633 W. 5th St., 28th Floor
Los Angeles, CA 90071
Tel: (213) 223-5900
Fax: (888) 373-2107
*john@lexiconlaw.com*
*nicole@lexiconlaw.com*

Scott D. Owens, Esq. (*pending pro hac vice*)
2750 N. 29th Ave., Ste. 209A
Hollywood, FL 33020
Telephone: (954) 589-0588
Facsimile: (954) 337-0666
scott@scottdowens.com

*Attorneys for the Plaintiff*